Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open and called into law. God save the United States and His Honorable Court. Good morning. Good morning all. We're here attending by Zoom the case of United States of America v. Tia Pugh. How do you say the last name? I'm sorry. Tia Pugh, Your Honor. Thank you very much. On behalf of Ms. Pugh is Mr. Gray. Can you hear us? Mr. Armstrong, I'm sorry. Yes, Your Honor. I can hear you. Okay. And Mr. Gray, can you hear us also? Yes, Your Honor. Okay. This case is set for 15 minutes each side. Mr. Armstrong, would you like to have 12 minutes for your first initial presentation? Yes, Your Honor. Okay. Are you ready to proceed? I am ready. Okay. You may proceed. Thank you, Mr. Armstrong. Thank you, Judge. May it please the Court, Your Honors, Judge Leal, Judge Brasher, Judge Booley, and Counsel for the United States. My name is Gordon Armstrong, and I'm honored to appear before this panel for this very important constitutional question that we have raised based on this statute. Before I address the issues that we've raised, I think it's important to talk about quickly some of the facts of this case and how they apply to this statute. Tia Pugh, obviously my client at the time in May of 2020 when this occurred, she was a 21-year-old African American female with no prior record. She had never been arrested a day in her life. Obviously, she observed, as the nation did, the saga involving George Floyd. Like many, she was shocked and outraged, and she decided to join the protest movement and the demonstrations that were being organized for downtown Mobile shortly thereafter. And she did that. She went there. There were speeches. There were marches. People carried signs, chants, singing. There was all manner of demonstration and shows of solidarity about this event. There were actually two marches. During one of the marches, and I don't know if you're familiar with downtown Mobile, but it ended up on Water Street, and the police were almost directing the traffic, and they were trying to get the people to move back toward Government Street behind the Bankhead Tunnel in downtown Mobile. That's when a small group obviously was trying to get to the interstate, and out of the thousands, probably 50 to 100 kind of broke away and started moving toward the I-10 on-ramp. Now, this on-ramp, the Mobile Police Department obviously had anticipated this. They had a reactionary team that immediately got ahead of this crowd. They formed a barrier of not only vehicles, of SUVs, but also the police. They had combat gear, helmets, and they formed a human barrier in front of the vehicles. They were shoulder to shoulder. There were many officers there, and then you also had officers on horseback for crowd control, and they were there backing up all of this, and so this crowd kind of stops, and there's another quarter mile before you even get to the interstate, but it is the I-10 on-ramp that's not disputed, so this crowd kind of is there for about 30 minutes. The police are trying to get them to continue on and to move along, and they weren't. There was a lot of yelling and screaming, and finally tear gas is dispersed, and that's when TFU emerges for the first time. The whole thing was being recorded by all the news stations. It was streamed live. TFU emerges almost out of nowhere, breaks a police car window with a bat. This car was behind the crowd. It was not even one of these barrier vehicles. It was behind the crowd, and then just as quickly, she's gone. She disappears into the crowd, and a couple of days later, she's arrested on municipal court misdemeanor charges, so she's charged for two different charges, and then it was a couple of days after that that the feds brought the violation that we're talking about today. Now, there's three primary problems that I see with this statute that renders it unconstitutional. First, obviously, is that the statute exceeds Congress's Commerce Clause power by criminalizing intrastate, and that's very important, the intrastate activity that is lacking a substantial nexus to interstate commerce. Now, the reason that is of any significance is because the intrastate activity intrudes on the state's general responsibility to enforce criminal laws. It's left to the state of Tenth Amendment. Secondly, the statute violates the First Amendment, and third, and I'll get to this last, is it violates the Due Process Clause for vagueness. Now, I have cited in my brief to Lopez and Morrison, and of course, Lopez determined that the outer limits of congressional authority under the Commerce Clause, it prohibits the criminalization of non-economic intrastate activity unless the regulated activity substantially affects interstate commerce. So that is the language, that is the third prong of Lopez that we rely on. What do we do with the jurisdictional? I mean, the way I read the statute is that it requires that the civil disorder at issue adversely affects commerce or the movement of any article or commodity in commerce. Well, I think that's exactly what the problem is. It does have that nexus, Judge, the jurisdictional nexus is there, but Lopez requires that that nexus be a substantial effect on commerce. And in this context- Is that the right way to read Lopez? And maybe it is, but I... So wouldn't it be consistent with Congress's Commerce Clause power if in the aggregate civil disorders and things like this could substantially affect commerce, and it's not necessary to prove that each individual discrete civil disorder substantially affects commerce as long as each individual discrete order affects commerce? Well, I think that has been spoken to when the courts have said that in a non-economic case, when you're trying to suppress violence, that you can't do that in the aggregate. That is not something that you can assume in the aggregate. You can in an economic crime that you're trying to address. But again, we're talking about a non-economic crime. We're talking about the act that this woman is alleged to have done, what her act did to interfere with a police officer. That has nothing to do with economics or commercial conduct. Whereas the aggregate- And I just... It does if the jury has to find that it adversely affected commerce or the movement of any article. I guess that's what I'm trying to figure out. Because of that jurisdictional hook, what do we do with that? Well, and that's why I say the statute is unconstitutional, is because the jury is is that it affects commerce in any way. There's no limitation. It just says in any way or degree. It's a de minimis standard. And so it's very easy for a jury to determine. I mean, all they have to show is that a truck is slowed down on this off-ramp, just maybe moving slowly. That's de minimis. But part of the jurisdictional hook for how you get into the federal forum, right, is not necessarily a substantive element of the crime, correct? Correct. It is. It is. The substantive element of the crime is whether what her act did interfered with the police. That is the direct element. Let me ask you this. I mean, isn't the jurisdictional hook in this statute the exact same as the jurisdictional hook in the Hobbs Act? Oh, absolutely. It is. So, I mean, how can we say, I guess, is there some way to distinguish what we're talking about here from Hobbs Act robbery? And the reason I say that is because this statute is very unique. I mean, I don't think there's a lot of precedent on this, but I mean, the Supreme Court is addressing Hobbs Act robbery all the time. And your argument seems to implicate that the Supreme Court should have said that Hobbs Act robbery, when they've affirmed conviction after conviction on it, is beyond Congress's cause power to criminalize. Well, I can just give an example of the personal cases I normally get under the Hobbs Act, which is a man or woman has a firearm, walks into a convenience store, robs the convenience store of cash. Right. But the hook is the same, right? Statutory hook is the same. So how would we distinguish? Right. And they're armed with a firearm. He's got the element of commerce in his hand. This case, there's no direct implication. And under 231, it doesn't require that there be some type of direct impact on commerce. In Hobbs, it does. In other words, so Hobbs comes under under the first two elements of the Lopez standard, whereas 231 comes under scrutiny under the third, which is when it's non-economic. I mean, Hobbs Act is economic. Obviously, you go in, you're taking proceeds from a store. You're taking beer out of their cooler or whatever people steal. And so typically, that's the difference. That's the distinguishing factor. In our case, under 231, since the requirement is that it have some relation to interstate commerce, the civil disorder has to have some relation to commerce. Then they have to show only that something happened that she may not, my client may have had nothing to do with. She just had to do some act with law enforcement. She had nothing to do with the economic aspect of it. So it's indirect. And so that's why it comes under scrutiny under the third element approach of third factor of Lopez that should require that this statute, and they could have corrected this statute, and they can still amend the statute like they did in Lopez. If they go back and just say that it requires an adverse effect, I'm sorry, a substantive or substantial adverse effect. Can I get you to address your, I'm sorry, go ahead. Because it does say adverse effect. It does say adverse. I meant substantial. I apologize. That it has to have a substantial adverse effect because- Can I get you to address your first amendment argument? Because you've got a Supreme Court case Hill that I think gives you quite a bit of support there. But I'd like you to address a question I have about Hill. Okay, sure. Which is in Hill, the Supreme Court was addressing a municipal ordinance. Right. And it said, it was kind of confusing. I think Hill is kind of a confusing case to me, frankly. But the Supreme Court said, this municipal ordinance is preempted by Texas law to the extent that it, oh gosh, I don't have the exact language, but to the extent it made it unlawful for any person to assault or strike a police officer. So it sort of read that out of the statute. And then it focused on whether, given that the assault and strike portions were preempted by Texas law, whether this municipal ordinance violated the first amendment because it went to speech. Well, I think the- Yeah. So just address, so there's this statute that the Supreme Court addresses in Hill, given that the assault and strike provisions are out of that. How is that statute comparable to this statute, I guess, is my question. Well, I think that statute does require her to interfere. And I think it's a list is the word they use. I may be wrong about that. But I think under the first amendment, the requirements is that in our context, it is the limitation of only, it says an act, any act. It doesn't even require any kind of mens rea. It just says any act. And that act could be verbal. It could be pure speech. It could be expressions. It could be gestures that someone makes toward officers trying to maybe distract them or interfere with them during their duties. Maybe there's some event going on and they try to distract them away from some event so that someone gets away maybe. Yeah, but doesn't this law, I mean, I guess here's the question. It seems to me, unlike the statute in Hill, this law also covers physical acts. So hitting a car with a baseball bat, for example, right? It doesn't just cover speech. Did the law in Hill just cover speech or did it also cover physical acts? I think it also covered physical acts, Judge. I don't think it's just, and that's why I've cited to it. It actually supports my argument under the first amendment. Pardon me? Well, I hope it does anyway. I know that your time is up, but I'd like to ask you a question about, you've made, we haven't made any arguments about whether or not 231A3, you haven't made any arguments that it's content neutral. If we find that it's content neutral, that will be then constitutional? That's not really an argument that I've put forward, Judge. I don't know that that saves it under Lopez. It still has to somehow substantially affect commerce, or at least the language could. And they could save this statute. Congress could do something about it like they did in the Lopez case by going back and just modifying or amending the statute itself to save it now because of the way that it's written. It's extremely vague. The terms can be subjectively applied depending on who the listener is. If a police officer, one police officer may have more thick skin, maybe has more experience and is not offended by somebody's gestures or yelling and screaming at them. Whereas another one might be, and might feel that he's been interfered with or she's been interfered with. And so it just leaves too much subjective analysis to the individual. And this statute shouldn't be read that way. Right. Mr. Armstrong, we'll have three minutes remaining for rebuttal. Mr. Gray. Thank you, Your Honor. And may it please the court. Scott Gray for the United States of America. A jury found that Tia Pugh violated 18 U.S. Code Section 231A3 when she used a baseball bat to shatter the window of a police vehicle as officers sought to quell a violent disturbance near the travel lanes of a cross-country interstate highway. Section 231A3 provides valuable protections to officers who must respond to violent events and to the other victims of those acts of violence. This court should uphold the constitutionality of the statute and affirm her conviction. There is an antecedent point for the court to consider, but it isn't the antecedent point that Pugh focuses on. Pugh gives great weight to the facts of this case, but it's notable that Pugh has not challenged the propriety of her conviction. That means she has not challenged the legal sufficiency of the evidence to support her conviction. She has not challenged the instructions that the jury was given. Instead, she only has surmounted a series of facial challenges to the statute. Indeed, she seeks the wholesale invalidation of Section 231A3 in all of its applications. To do that, she has to mount a particularly high bar for all of her challenges except for her overbreadth challenge. She has to prove the Salerno standard. That means she has to establish that there is no valid constitutional application of the statute. She cannot make that showing because the statute applied quite constitutionally in her own case. Well, I don't want to focus on this too much, but that's not the standard for her substantial overbreadth argument of the first amendment. She's got a different standard. That's correct. That was going to be my next point. The overbreadth standard is slightly broader, but the Supreme Court still repeatedly has referred to the overbreadth standard as strong medicine that should not be casually employed. While it is true that Pugh can rely on other conduct in that instance, this court still applies a very to determine both whether it is speculative and whether the statute is in fact substantially overbroad, both as a literal matter and in comparison to the valid scope of regulatory authority. I have a lot of questions, I'll say. On the overbreadth, what do you do with Hill? How would you distinguish Hill, which just seems to me to be the best case for the other side? I think there's no doubt that Hill is the best case for the other side and that at 30,000 feet, there can be a similarity between the two statutes. But once the court zooms in, there are clear differences between the statutes. For starters, and I believe Judge Brasher, you referenced this in the questions of my opponent, there was a feature of Hill that, as I understand it, is a creature of Texas law. Some of the more physical obstructive acts were removed effectively from the parameters of the statute. Those were covered by other provisions of Texas law, such that there was a record before the Supreme Court in Hill where really the more, problematic applications of the statute were the central reach of that ordinance. The other distinction with Hill is the language in Hill and what the Supreme Court focused on, as I recall it, was that there was a clear recognition that interruptions would qualify. For example, someone who interrupts an officer, makes a verbal statement to the officer, that conduct appeared to clearly fall within the statute. And so when the court has recognized overbreath challenges, it's true of Hill, it's also a clue of the Stevens case that the defendant cited, the court has recognized that there's essentially a trap door that brings in large amounts of potentially protected or routine or mundane speech. That's not the case with Section 231A3. It actually is tailored to each turn. So for starters, there is language around the obstructive act that clearly appears to limit it to an act that is obstructive in its nature, something that is akin to using a baseball bat to shatter the window of a vehicle. And the United States cited examples of the applications of the statute to those sorts of conduct. The other component that is a major piece of this statute is the mens rea. There was an intent jury instruction given and the United States has accepted that there is an intent component. So can I ask you about that? I just wanted to drill down on that a little bit because when I looked at the indictment, I've not looked at the jury instructions, but I did look at the indictment. She was indicted for, the word was knowing, right? Does that really give the intent to interfere? I mean, how does that language, one, I guess, am I right about that? Is it knowing to the act and not knowing that the act will interfere with law enforcement? And two, how does that fix the problem? So Your Honor, with the caveat that I don't have the indictment sitting in front of me, I believe that the person has to knowingly commit the obstructive act itself, but then has to intend that that act will impede or interfere with the disorder itself. That's my recollection of how the jury instructions read at the case. And I will note those jury instructions were not opposed and have not been challenged on appeal. So I will sort of note the antecedent point that even if we're having that argument, the way to address that issue is to interpret the statute. That's what this court and the Supreme Court have done numerous times in cases like Ray Haif and Alanis is they have interpreted and applied a mens rea onto the statute. They haven't simply invalidated the statute. So your position then is that the statute should, in fact, be interpreted where there's an intent element. So you have to knowingly commit the act, it can't be an involuntary act. And then you have to intend that it had this effect on law enforcement. The defendant should intend that there was an impact on law enforcement. The United States presented evidence and the jury made that finding. Those issues really aren't before the court in this appeal. The issue before the court in this appeal is whether the statute then is substantially overbroad in its application. And it simply isn't because there are these other facets of the statute. And even if there were a particular, and I will also note, I've touched on two facets of the statute, the obstructive act piece of it, and the second being the intent. The third piece of the statute that I would accentuate for purposes of the overbreadth argument is there is both a volume or numerosity type component, there has to be an assemblage of at least three persons, and there have to be acts of violence such that this is obstructing the limiting piece of this statute such that the obstructive act has to be occurring in some connection with the actual disorder itself. And that disorder has to be violent in its nature, which it was in this case, and that's what the jury found. So when there are those pieces of the statute and the court reads the statute as a whole, it is not substantially overbroad. The United States admits that the cases the court should look to most instead of Hill and Stevens would be cases like the Supreme Court's decision in Williams, or this court's relatively recent decision regarding the cyberstalking statute in Flurry. Those are cases where the court engaged and recognized that there were speculative examples that might test the limits of the First Amendment, but neither court invalidated the statute based upon that speculation. The court instead recognized that it could address those types of circumstances on a case-by-case basis in the context of an as-applied challenge or through some other vehicle. Therefore, this is not the circumstance in which this court should employ the strong medicine of an overbreadth challenge and invalidate this statute, not only in speculative circumstances that could be problematic, but in the many valid circumstances in which the statute has applied, including this particular circumstance. Can I get you to address the Interstate Commerce Clause? So the way I think about the Interstate Commerce Clause issue in the case is that we've said the Hobbs Act is consistent with Congress's Commerce Clause powers. This statute has exactly the same jurisdictional book as the Hobbs Act does. And so unless there's some difference between what's going on here in the Hobbs Act, then we have to say that this statute is constitutional too. Your friend on the other side of the case says that the difference is one between economic activity and non-economic activity and maybe some other stuff. Would you address his attempt to distinguish this from the Hobbs Act statute? Absolutely, Your Honor. So I think that my friend on the other side is defining non-economic versus economic activity far too narrowly. The civil disorder statute clearly is attempting to address a threat to interstate commerce, to the movement of persons and goods in commerce. The way the statute works is that it extinguishes the flame of civil disorders by depriving those disorders of oxygen in multiple ways. And so Section 231A.3 is one of those mechanisms. And this case is an ideal illustration of the ways that civil disorders can affect interstate commerce. There was testimony at trial that this was affecting travel along the lanes of a cross-country interstate that runs from Florida to California. So there's a strong connection to interstate commerce in this case and in the circumstances in which assemblages of three or four persons are committing violent acts. It's also notable that this court consistently has approved of statutes that contain a legislative jurisdictional nexus. And that was one point I think I address it briefly in the United States brief. When we speak of jurisdiction here, we're speaking of a concept that's a bit different than subject matter jurisdiction like federal question or the like. We're speaking of legislative jurisdiction and there's a line of 11th that discuss that nuance. But this court has consistently recognized that Congress can regulate the criminal law through the interstate commerce clause. The United States would submit that this case not only or that this statute I should say is not only similar to the Hobbs Act, but it is also similar to how this court applies the firearm prohibitions in 18 U.S. Code Section 922G. This firearm the defendant possessed traveled at some point in interstate commerce even if the defendant's active possession itself did not affect interstate commerce. There's 18 U.S. Code Section 844I, which this court addressed in Bellflower, which the United States cited in its brief. And this the Bellflower court noted the many instances in which this court had upheld similar statutes. Therefore, and in 844I, the question wasn't necessarily whether the destructive act in and of itself substantially affected commerce, but whether the destructive act targeted a building or structure that operated in commerce. Therefore, and I would also point out for good measure, this court can look to the former Fifth Circuit's decision in Featherston, which didn't interpret Section 231A3, but did interpret Section 231A1 and found that that provision, which has a similar commercial nexus component to this one, readily is constitutional and cited the heart of Atlanta Motel case, which the United States submits as an apt example here. And so really the starting point of this court's analysis should be the Featherston panel's decision in the early 1970s. And so with those principles in mind, Section 231A3 clearly applied in an appropriate and constitutional fashion in Pew's case. The circumstances of her conviction have not been challenged and are not before the court today. The statute also is not substantially overbroad and it provides appropriate parameters to guide its enforcement and to allow this court to interpret it subsequently as the need arises in further cases. And so with that, unless the court has further questions, the United States would rest on its briefs and ask that the court affirm. Thank you, counsel. Mr. Armstrong, you have three minutes remaining for rebuttal. Thank you. Thank you, your honor. Let me just start with where he left off. We did not bring a challenge to the sufficiency of the evidence for the very reason we're challenging the statute. The statute is overly broad. Any act that is the standard to be applied that is so broad, it could include almost anything. Expression, it could include speech, it could include just jostling about with an officer, or even a physical assault could come under that. Not only that, but then when you look at the impact on commerce, it only has to be the civil disorder. So, you know, she's not, it doesn't even have to be shown that she's a part of the civil disorder. It just has to be shown that it's incident too, which is a very... It's almost like what you're arguing is that she didn't have fair notice of what the statute requires in order to make it a crime, correct? Correct. And that's our last... Right. But I guess the question I have for that is that this statute, what your client did, which was take a baseball bat to a police vehicle and break that window, I mean, no one is claiming that that is something that was lawful to begin with, correct? Oh, absolutely. And she was arrested and charged on local charges for that. So the intent to do that, that was obviously not a lawful act. The question is whether or not the nexus that got you into federal court, whether she had to know that that was going to get her into federal court. Well, correct, Judge. And again, there's so much there to unwrap, but absolutely, that is correct. If you take a baseball bat and break a window, you know that that is wrong. Most people over the age of six probably, or five, know that that is wrong if they had parents that taught them that. But so that is not really our issue. And that's another reason why it is not the act that has the link to interstate commerce, it's the civil disorder that has the link to commerce. And that's why Lopez requires that if it's not an economic regulation, if you're not trying to regulate economic activity, then that has to be a substantial effect. That's really the nugget of your argument, the difference between economic and non-economic, that's really where the hinge is on. Under the Commerce Clause, yes, absolutely. Absolutely. And another thing, the government in this case, in their brief, and again today, talks about the violent nature of this civil disorder. What was alleged at trial was the violence was the throwing of plastic water bottles, apparently. There was no physical contact between anyone and law enforcement. And again, the civil disorder has to have violence attributed to it, not the act, not the act committed by the defendant. And my time is up. Thank you very much, both of you. We will take the matter under advisement. Thank you very much for your argument, and we'll bring it to a very real time. Thank you. Judge, could I have one last comment in closing? I just wanted to thank the court for allowing me to accommodate. I had a conflict in November when this was originally set, and I appreciate the court accommodating that. Ms. Gaddis was very helpful, and Mr. Jerome was, and especially the United States, they were very cooperative and cordial to me. And I think it speaks to the offices here in the Southern District of Alabama, and I did want to make that and thank the court. Thank you, Mr. Armstrong, and I hope that your son is doing well. Yes, thank you. Thank you. Thank you all. We'll be in a brief recess for 10 minutes. Thank you.